UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| **ROSS STOUT,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )   Case No. 1:20-CV-00141-NCC |
| | ) |
| **KILOLO KIJAKAZI,**[1] | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
|     **Defendant.** | ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Ross Stout ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 14) and Defendant has filed a brief in support of the Answer (Doc. 17). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 4).

### I. PROCEDURAL HISTORY

Plaintiff filed his application for DIB on May 19, 2017 (Tr. 303-04). Plaintiff was initially denied on August 9, 2017, and he filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 202-07). After a hearing, by decision dated July 1, 2019, the ALJ found Plaintiff not disabled (Tr. 117-35). On April 29, 2020, the Appeals Council denied Plaintiff's

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi shall be substituted for former Commissioner Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

request for review (Tr. 1-7). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2015, and has not engaged in substantial gainful activity during the period from his alleged onset date of August 20, 2015, through his date last insured of December 31, 2015 (Tr. 122). The ALJ found Plaintiff has the severe impairments of post-traumatic stress disorder ("PTSD"), lumbar degenerative disc disease, and left ankle ligamentous laxity, but that no impairment or combination of impairments meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 122-23). After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work with the following limitations (Tr. 125). Plaintiff is limited to work that involves moderately-complex tasks (*Id.*). Plaintiff is further limited to work that involves only occasional interaction with the public and with coworkers (*Id.*). The ALJ found that, through the date last insured, Plaintiff was unable to perform any past relevant work but that there are jobs that exist in significant numbers in the national economy Plaintiff could perform during this time including cleaner, housekeeping, routing clerk, and folding machine operator (Tr. 128-29). Thus, the ALJ concluded that Plaintiff has not been under a disability at any time from August 20, 2015, the alleged onset date, through December 31, 2015, the date last insured (Tr. 130).

## III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. § 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. § 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. § 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. § 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a

claimant's RFC and the physical and mental demands of the work the claimant has done in the past.  20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work.  20 C.F.R. § 404.1520(g).  At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC.  *Steed*, 524 F.3d at 874 n.3.  If the claimant meets these standards, the ALJ will find the claimant to be disabled.  "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.").  Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence.  *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).  *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo.  *Id.*  Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion.  *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of the ALJ, who is the fact-

4

finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff asserts that the ALJ's RFC decision is not supported by substantial evidence as it fails to consider all the substantial medical evidence of record or to be based on "some" medical evidence as required under the standards contained in *Singh v. Apfel*, 222 F.3d 448 (8th Cir. 2000) and *Lauer v. Apfel*, 245 F.3d 700 (8th Cir. 2001) (Doc. 14 at 7). Specifically, Plaintiff argues that the only medical opinion evidence of record specifically cited by the ALJ was to the non-examining state agency physicians (*Id.* at 6). Plaintiff asserts that the ALJ failed to consider the thorough examination by a VA psychologist from December 2015 that commented on Plaintiff's ability to engage in work related activity (*Id.* at 6-7). For the following reasons, the Court finds that Plaintiff's argument is without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

RFC is the most a claimant can still do in a work setting despite that claimant's physical or mental limitations. *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (citation omitted); 20 C.F.R. § 404.1545(a)(1). An ALJ determines a claimant's RFC "based on all the relevant evidence, including medical records, observations of treating physicians and others, and [claimant's] own description of her limitations." *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). Although the ALJ bears the primary responsibility

5

for assessing a claimant's residual functional capacity based on all relevant evidence, "a claimant's residual functional capacity is a medical question." *Lauer*, 245 F.3d at 704 (quoting *Singh*, 222 F.3d at 451). *See also Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quoting *Cox*, 495 F.3d at 619). "An administrative law judge may not draw upon [his or her] own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).

As previously discussed, the ALJ determined Plaintiff has the RFC to perform light work[2] with the following limitations (Tr. 125). Plaintiff is limited to work that involves moderately-complex tasks (*Id.*). Plaintiff is further limited to work that involves only occasional interaction with the public and with coworkers (*Id.*).

Plaintiff argues that the ALJ failed to appropriately consider the medical opinion of a VA psychologist from December 2015 (Doc. 14 at 7). On December 10, 2015, David M. Van Pelt, PsyD ("Mr. Van Pelt"), a psychologist with the U.S. Department of Veterans Affairs, completed a "Review Post Traumatic Stress Disorder (PTSD) Disability Benefits Questionnaire" related to Plaintiff's claim for VA disability benefits (Tr. 493-502). In this Questionnaire, Mr. Van Pelt indicated that Plaintiff's current diagnoses were (1) PTSD, (2) Major Depressive Disorder, and

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

6

(3) Polysubstance Use Disorder³ (Tr. 493).  After review of Plaintiff's VA records and an examination, Mr. Van Pelt concluded that Plaintiff would have "[o]ccupational and social impairment with occasional decrease in work efficiency and intermittent period of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care, and conversation" (Tr. 494).  In doing so, Mr. Van Pelt indicated Plaintiff's PTSD results from direct exposure to and witnessing traumatic event(s) which results in significant symptomology including, but not limited to: recurrent, involuntary, and intrusive distressing memories; recurrent distressing dreams; dissociative reactions; intense or prolonged psychological distress; marked physiological reactions; persistent avoidance of stimuli; negative alterations in cognitions and mood; and marked alterations in arousal and reactivity (Tr. 499-501).  Specifically, as noted by Plaintiff, Plaintiff suffers from irritable behavior and angry outbursts, with little or no provocation, typically expressed as verbal or physical aggression toward people or objects; hypervigilance; exaggerated startle response; problems with concentration; and sleep disturbance (Tr. 501).  As such, Mr. Van Pelt further determined that "[t]he PTSD symptoms described above cause clinically significant distress or impairment in social, occupational, or other important areas of functioning" (*Id.*).  Plaintiff's counsel noted the report during his December 17, 2018 hearing, stating in relation to amending his alleged onset date that his new onset date of August 2015 was consistent "with records that he had severe PTSD that was getting worse" (Tr. 153).  Counsel also highlighted the report specifically in his opening statement, stating "There is actually a December 2015 examination that the VA

---

³ At the time, Plaintiff reported not using drugs since 2013 and Mr. Van Pelt determined that Plaintiff was in remission (Tr. 497).  Plaintiff's history of alcohol and substance abuse is not at issue here and will not be addressed by the Court.

conducted that goes through his symptomology at that point, consistent with the VA regulations" (Tr. 154).

The ALJ did not err in his treatment of Plaintiff's December 2015 VA evaluation.  As a preliminary matter, as noted by Defendant, the December 2015 medical report does not constitute a medical opinion.  A "medical opinion" is defined as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations" in the following relevant area, "your ability to perform metal demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting."  20 C.F.R. § 404.1513(a)(2).  Here, Mr. Van Pelt's analysis in the PTSD Questionnaire relates to Plaintiff's claim for VA disability benefits, directly addressing that criteria, and does not more than tangentially address the relevant categories under social security law.  Further, the Commissioner "will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits."  20 C.F.R. § 404.1504.  Regardless, the ALJ discussed and cited Plaintiff's VA treatment records throughout his decision and cited to them (Tr. 123-28).  In fact, the ALJ repeatedly referenced the 2015 report in his decision (Tr. 124, 126-28).  For example, the ALJ noted that while Plaintiff had "passing suicidal thoughts," he reported never having an intent to act on the thoughts (Tr. 126-27 (citing Tr. 497)).  The ALJ further indicated, citing to the report, that Plaintiff reported trouble with depression, nightmares and night terrors; low energy and concentration problems; and difficulties controlling his anger, hypervigilant symptoms and exaggerated startle responses (Tr. 127 (citing Tr. 498)).

8

To the extent Plaintiff asserts that the ALJ failed to properly evaluate Plaintiff's subjective complaints in accordance with SSR 16-3p[4] in light of the VA medical report, the Court finds this assertion unavailing.  In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints.  *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts."  *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001).  "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination."  *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).  *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

The ALJ determined that "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" (Tr. 125-26).  More specifically, the ALJ found Plaintiff's "statements about the intensity, persistence, and limiting effects of [his] symptoms [] are inconsistent because although the evidence suggests the presence

---

[4] Social Security Ruling 16-3p eliminated the term "credibility" from the analysis of subjective complaints.  However, the regulations remain unchanged; "Our regulations on evaluating symptoms are unchanged."  SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. § 404.1529.

of severe impairments, it additionally suggests the [Plaintiff] is not limited beyond the residual functional capacity set forth" (Tr. 126). [5] In doing so, the ALJ first considered Plaintiff's testimony, noting Plaintiff testified that the primary reason he cannot work is because he has hallucinations and black outs (Tr. 125, 162). *See also* Tr. 377 ("My PTSD causes flashbacks, hallucinations, and angry outbursts."). The ALJ further noted that Plaintiff testified that he experiences flashbacks, memory issues, and night terrors, and Plaintiff has anxiety being around people and his anxiety causes agoraphobia (Tr. 125, 163-66, 377-78). Plaintiff also reported that his depression is crippling (Tr. 125, 377).

The ALJ next discussed the limited medical record for the relevant period, detailing his findings. Specifically, the ALJ noted that, during the period, Plaintiff started working with a psychiatrist and social worker at the Cape Girardeau veteran's affairs facility (Tr. 126, 165, 1321). Citing to the December 2015 VA report, the ALJ indicated that while Plaintiff reported passing suicidal thoughts, he stated he never had an intent to act on them (Tr. 497). As detailed above, the ALJ then addressed other findings from the report including Plaintiff's hypervigilance, difficulties in controlling his anger, and exaggerated startle responses (Tr. 127, 498). The ALJ also noted Plaintiff's GAF Scores, [6] highlighting a GAF Score of 58 from

---

[5] Plaintiff does not raise any arguments regarding the ALJ's handling of his physical impairments. As such, the Court will only address Plaintiff's mental health impairment as it relates to the ALJ's evaluation of his subjective complaints.

[6] Global assessment of functioning (GAF) is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, 32-34 (4th ed. rev. 2000) (the "DSM"). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. *Id.* at 32. The newest edition of the DSM—the fifth edition published in 2013—"dropped the GAF scale as a diagnostic tool because it suffers from a

October 2016 which, as indicated by the ALJ, is consistent with only a mild to moderate degree of limitation with regard to his functioning (Tr. 127, 1315). *See also* Tr. 1525 (GAF score of 58). Regardless, the ALJ found, "there are no significant clinical findings of any marked or extreme mental health limitations" (Tr. 127). The ALJ also highlighted the relatively normal findings during the period (*Id.*). Specifically, the ALJ noted that during an August 2015 visit, Plaintiff appeared down and reported a depressed mood but still had fair grooming and hygiene (Tr. 127, 563). At a December 2015 visit, as noted by the ALJ, Plaintiff was alert and fully oriented, with a casual and unkempt appearance; exhibited a calm and stable mood throughout; and was cooperative and forthcoming with information (Tr. 127, 504). Indeed, upon review of the record from the relevant period, these records further indicate that Plaintiff presented as agreeable (Tr. 490), and alert and oriented to all spheres during this visit (Tr. 504). An ALJ may determine that subjective complaints are not credible in light of objective medical evidence to the contrary. *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006).

    Next, the ALJ also considered Plaintiffs relatively conservative treatment for his PTSD. Specifically, the ALJ noted that Plaintiff never required any hospitalizations (Tr. 126). Indeed, upon review of the record, it is clear that Plaintiff responded well to a conservative treatment plan including supportive, cognitive-based psychotherapy and psychotropic medications. *See, e.g.,* Tr. 490 ("Veteran is making some progress at this time."). An ALJ may properly consider Plaintiff's conservative treatment history in his determination of a plaintiff's credibility. *See, e.g., Kamann v. Colvin,* 721 F.3d 945, 951-52 (8th Cir. 2013); *Black v. Apfel*, 143 F.3d 383, 386

---

conceptual lack of clarity and 'questionable psychometrics in routine practice.'" *Mosier v. Colvin*, 2014 WL 4722288 at *3 (W.D. Mo. Sept. 23, 2014) (quoting American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, 16 (5th ed. rev. 2013)). "GAF scores have no direct correlation to the severity standard used by the Commissioner." *Wright v. Colvin*, 789 F.3d 847, 855 (8th Cir. 2015) (citing 65 Fed. Reg. 50746, 50764-65).

11

(8th Cir. 1998) (conservative course of treatment supported ALJ's decision to discredit subjective complaints of pain).

  The ALJ also properly found that Plaintiff's "broad array" daily activities were indicative of a significant level of functioning (Tr. 127).  Specifically, as it relates to Plaintiff's mental health impairments, the ALJ found that Plaintiff has moderate limitations in the ability to understand, remember, or apply information and ability to interact with others, and mild limitations in the ability to concentrate, persist, or maintain pace and ability to adapt of manage himself (Tr. 124).  The ALJ noted that Plaintiff can perform simple maintenance such as household repairs, prepare meals, and pay bills (Tr. 379-80); Plaintiff also spends time with friends and family, was able to attend class and church, and has a good relationship with his parents and some of his siblings (Tr. 381, 489,496, 1193); Plaintiff goes fishing and arrow hunting (Tr. 499); and Plaintiff is able to handle self-care and personal hygiene and can also care for his pets (Tr. 378).  *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) ("[t]he inconsistency between [the claimant's] subjective complaints and evidence regarding her activities of daily living also raised legitimate concerns about her credibility").

  The ALJ also specifically noted that Plaintiff was pursuing a Bachelor's degree in Journalism and Public relations (Tr. 124).  "[Plaintiff] states he has a 13-credit course starting Monday" (Tr. 563).  Plaintiff argues that he was unable to finish his schooling, which was partially online, as a result of his PTSD (Doc. 14 at 13 (citing Tr. 171)).  However, as noted by the ALJ, Plaintiff attended classes, completed assignments, and was studying for test during the relevant period (Tr. 124, 169-70, 489, 496).  Upon review of the record, Plaintiff appears to have continued his schooling until December 2016, completing approximately 2 years of college in total (Tr. 366).  In a visit from April 12, 2017, Plaintiff suggested that his break from school was

12

only temporary; "[I am n]ot able to go this semester.  My anxiety and depression kept me from going.  I started the semester but VA sent me to a medication review and she put me on an antidepressant that would not work" (Tr. 1582).  Indeed, "[a]cts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." *Bernard v. Colvin*, 774 F.3d 482, 489 (8th Cir. 2014) (quotation marks omitted) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001)).

Finally, to the extent Plaintiff identifies records that support Plaintiff's allegations to the contrary, "[i]f substantial evidence supports the decision, then we may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if we may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).  In conclusion, the Court finds the ALJ's RFC determination to be based on substantial evidence and is consistent with Regulations and case law.

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED**, with prejudice.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 29th day of September, 2021.

   /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE